UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SYNERGY FLAVORS OH, LLC,                              Case No. 1:15-cv-547
       Plaintiff,                                    Litkovitz, M.J.

vs.

AVERITT EXPRESS, INC.,                      **ORDER**
       Defendant.

     Plaintiff Synergy Flavors OH, LLC (Synergy) brings this action against defendant Averitt

Express, Inc. (Averitt), alleging a claim for negligence under state law and a claim under the

Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. Plaintiff Synergy

seeks to recover damages it allegedly sustained in connection with Averitt's shipment of goods

pursuant to a contract between the parties. This matter is before the Court on: (1) defendant

Averitt's motion for partial summary judgment (Doc. 24), plaintiff's opposing memorandum

(Doc. 25), and defendant's reply (Doc. 29); and (2) plaintiff's motion for partial summary

judgment as to Count I of the complaint (Doc. 28), defendant's opposing memorandum (Doc.

34), and plaintiff's reply (Doc. 35).

**I. Undisputed Facts**

     The Court has gleaned the following facts from the undisputed allegations of the

complaint, the parties' memoranda, and the evidence of record. The facts are undisputed except

where noted.

     Plaintiff Synergy is an Ohio limited liability company with its principal place of business

in Hamilton, Ohio. (Doc. 1, Complaint, ¶ 1; Doc. 5, Answer, ¶ 2). Defendant Averitt is a

corporation organized under the laws of Tennessee with its principal place of business in Cookeville, Tennessee. (Doc. 1, ¶ 2; Doc. 5, ¶ 3). At all relevant times, Averitt was in the business of providing nationwide logistical and shipping services for goods. (*Id.*).

On or about April 1, 2014, Synergy contacted Averitt about shipping a commercial centrifuge bowl ("bowl") from Hamilton, Ohio to Separators, Inc. in Indianapolis, Indiana for repairs. (Doc. 28, Exh. A, Affidavit of Ted Richardt, Synergy Accounting Manager, ¶ 3). The bowl was a component of an Alfa Laval MRPX 409 SGV Clarifier. (Doc. 24, Exh. E, Synergy Interrogatory Responses 8, 9). Averitt picked the bowl up from Synergy on April 1, 2014. (Doc. 1, Exh. A). Averitt transferred the shipment to another carrier, Pitt Ohio, on April 2, 2014. (Doc. 1, Exh. B). Pitt Ohio completed the delivery to Separators, Inc. on April 3, 2014. (*Id.*).

Averitt, the carrier, did not generate or issue the bill of lading[1] for the shipment. (Doc. 24, Exh. D, Affidavit of Gary Whitaker, Averitt's Director of Cargo Claim Services, ¶ 3). Synergy, the shipper, created the bill of lading for the bowl by inputting information into a computer and printing Bill of Lading No. 04012014 ("Bill of Lading") (*see* Doc. 1, Exh. A).[2] (Doc. 24, Exh. C, Synergy's Response to Requests for Admissions 1, 3, 4, 6, 7, 8). The Bill of Lading describes the goods to be shipped as "one bowl" and the number of packages as one skid weighing 450 pounds. (Doc. 1, Exh. A). The Bill of Lading includes the following information:

Note: Liability limitation for loss or damage in this shipment may be applicable.

Received, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to the rates, classifications, and rules that have been established by the carrier and

---

[1] A bill of lading "records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *ABB Inc. v. CSX Transp., Inc.*, 721 F.3d 135, 138 n.3 (4th Cir. 2013) (citation omitted).

[2] Synergy does not admit in its responses to Averitt's Requests for Admissions that it "generated," "produced," or "issued" the Bill of Lading. (Doc. 24, Exh. C, Responses to Requests 6, 7, 8).

> are available to the shipper, on request, and to all applicable state and federal regulations.

(*Id*.). The Bill of Lading does not contain a space where the shipper can declare the value of the cargo being shipped. (*Id*.). The Bill of Lading is signed and dated April 1, 2014, by a representative of Synergy and by Averitt's driver, who certified that the property was "received in good order." (*Id*.).

At some point prior to the shipment, Averitt's driver affixed a "pro-sticker" to the Bill of Lading. (*Id*.). There is no evidence in the record as to whether the driver affixed the sticker before the companies' representatives signed the Bill of Lading. The pro-sticker states:

> This shipment is subject exclusively to the Uniform Bill of Lading, the liability limitations and all other applicable provisions of the carrier's individual and collective tariffs, including NMF 100.

(Doc. 24, Exh. D, Whitaker Affidavit, ¶ 11).

The Averitt Rules Tariff in effect at the time of the shipment includes "Item 575 Limitation of Liability – Excess Valuation" and "Item 575-50 Limitation of Liability – Released Value – Used, Reconditioned or Refurbished Articles or Parts."[3] (Doc. 24, Exh. D, Whitaker Affidavit, ¶¶ 12, 13). Item 575 provides, in pertinent part, as follows:

> 1.(a) Except as otherwise set forth in individual shipper contracts, in the event of loss and/or damage to any shipment, carrier's liability will not exceed $5.00 per pound per package, subject to a maximum excess valuation of $100,000.00 per conveyance or the released valuation established in this tariff or the current NMF 100. The lowest valuation will control. If shipper desires to tender a shipment requiring carrier liability in excess of $5.00 per pound per package, then shipper must indicate in writing on bill of lading at time of shipment and pay carrier the total dollar amount of excess valuation required. In no event shall such prepaid Excess Valuation amount exceed $50.00 per pound per package or $100,000.00 per conveyance, whichever is less.

---

[3] "Released value" is the value of goods established by the shipper which limits the carrier's liability for lost or damaged goods. *See Toledo Ticket Company v. Roadway Exp., Inc.*, 133 F.3d 439, 441 (6th Cir. 1998). The shipper can choose to accept a lower shipping rate and limit the carrier's liability to a lower value than the actual worth of the goods, or it can select a higher rate and place the risk of loss on the carrier. *Id*. at 441-42.

Articles tendered with an invoice value exceeding $5.00 per pound per package will be considered to be of extraordinary value. Articles accepted with an invoice value exceeding $5.00 per pound per package will be considered to have been released by the shipper at $5.00 per pound per package. The maximum excess valuation is $100,000.00 per conveyance. CARRIER will assess an additional charge as shown below. Such charge is in addition to the lawful freight charges otherwise accruing to the shipment. Excess valuation will not exceed full actual value of goods lost or damaged in transit. . . .

. . . .

2. The provisions of this item will not apply on articles subject to a specific released value, including but not limited to the following AVRT 100 Items:

. . . .

Item 575-50 (Limitation of Liability – Released Value – Used, Reconditioned or Refurbished Articles or Parts);. . . .

(*Id.*, Exh. 3). Item 575-50 provides that specified commodities, including "Machinery Groups or Parts (NMFC Items 114000 through 133454)," when "shipped as 'used,' 'reconditioned' or 'refurbished' will be accepted for transportation only when the consignor releases the value of the property to a value not exceeding $0.10 per pound." (*Id.*). Paragraph 2 states:

Failure of the consignor to release the value of the property to a value not exceeding $0.10 per pound or declare that the commodity is 'used,' 'reconditioned' or 'refurbished' shall not alter the application of this item.

(*Id.*).

After the shipment had been completed, Synergy submitted a Loss/Damage Claim Form to Averitt dated April 22, 2014, seeking damages in the amount of $49,748.00. (Doc. 28, Exh. A, Richart Affidavit, Exh. 1). The form was prepared by Joe Schneider from Synergy. (*Id.*). Mr. Schneider stated that the bowl had been shipped to Separators, Inc. for repair of the sliding bowl bottom, the bowl was strapped to a skid with two nylon racheting straps and was shrink wrapped, and the bowl arrived at Separators, Inc. without the straps. (*Id.*). Separators, Inc. unwrapped the bowl and noticed a "large flat spot along the top of bowl." (*Id.*). Mr. Schneider

4

reported that Separators, Inc. had called him on April 3, 2014, to inform him that the bowl was damaged. (*Id*.). He indicated that a repair quote was attached to the form. (*Id*.). Averitt refused to pay the claimed damage amount. (Doc. 28, Exh. A, Richardt Aff., ¶ 6).

## II. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. The court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id*. (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

### III. The Parties' Positions

Defendant Averitt moves for summary judgment on plaintiff's negligence claim and on plaintiff's claim under the Carmack Amendment. Defendant alleges it is entitled to summary judgment on plaintiff's negligence claim because the claim is preempted by the Carmack Amendment. (Doc. 24-1 at 8-10). Averitt alleges it is entitled to summary judgment on plaintiff's claim under the Carmack Amendment because there is no genuine issue that its liability is limited under the terms of the Averitt Rules Tariff. (*Id*. at 10-18).

Plaintiff Synergy has not addressed either its negligence claim or defendant Averitt's preemption argument in its response to defendant's summary judgment motion. (Doc. 25). Synergy denies that Averitt effectively limited its liability for the shipment of the bowl under the Carmack Amendment. (Doc. 25 at 4-12). Synergy argues in support of its motion for summary judgment on its Carmack Amendment claim that Averitt is liable to it as a matter of law for the full amount of damage to the bowl, which Synergy alleges totals $49,784.00. (Doc. 28).

#### A. The negligence claim is preempted.

The Carmack Amendment governs the liability of carriers for lost or damaged goods. *Arctic Exp., Inc. v. Del Monte Fresh Produce NA, Inc*., 366 B.R. 786, 793 (S.D. Ohio 2007). The Carmack Amendment preempts all state and common law causes of action relating to services covered by the statute. *Id*. at 793-94 (citing *Adams Express Co. v. Croninger,* 226 U.S. 491, 505-06 (1913) (the Supreme Court held that "almost every detail of the subject is covered so completely that there can be no rational doubt that Congress intended to take possession of the subject [of damages in interstate transportation], and supersede all state regulation with reference to it."); *Atchison, Topeka & Santa Fe Ry. v. Harold,* 241 U.S. 371, 378 (1916) ("The Carmack Amendment . . . was an assertion of the power of Congress over the subject of interstate

6

shipments, the duty to issue bills of lading and the responsibilities thereunder, which in the nature of things excluded state action."); *W.D. Lawson & Co. v. Penn Cent. Co.,* 456 F.2d 419, 421-24 (6th Cir. 1972) (holding that the Carmack Amendment preempted common law actions by shipper against carriers for damages to shipment in violation of contract for interstate carriage of goods)). The law is firmly established in the Sixth Circuit that the Carmack Amendment preempts state law claims seeking damages against a common carrier "for failure to properly perform, or for negligent performance of, an interstate contract of carriage." *Hemsath v. J. Herschel Kendrick Moving & Storage*, No. 1:06-cv-04, 2006 WL 1000189, at *1 (S.D. Ohio Apr. 14, 2006) (quoting *American Synthetic Rubber Corp. v. Louisville & Nashville Ry. Co.,* 422 F.2d 462, 466 (6th Cir. 1970)). *See also Mitsui Sumitomo Ins. Co., Ltd. v. Daily Express, Inc*., No. 1:15-cv-316, 2015 WL 6506546, at *2 (S.D. Ohio Oct. 28, 2015) ("To the extent that Plaintiff's separate Counts I and II plead any cause of action for negligence or breach of contract *outside* the scope of the Carmack Amendment, such claims are preempted by federal law.") (emphasis in original).

In accordance with the foregoing, it is clear plaintiff's negligence claim alleged in Count II of the complaint is preempted by the Carmack Amendment. Plaintiff has conceded that it cannot prevail on the negligence claim by failing to address the claim in its response to defendant's summary judgment motion. The Court will therefore dismiss plaintiff's negligence claim on preemption grounds.

**B. Neither party is entitled to summary judgment on the Carmack Amendment claim.**

Averitt contends it is entitled to summary judgment on plaintiff's claim under the Carmack Amendment (Count I). Averitt argues there is no genuine issue that its liability for any damage to the bowl Synergy shipped is limited under the terms of the Averitt Rules Tariff.

7

Averitt alleges that Synergy is charged with constructive knowledge of any limitation on liability included in the Rules Tariff and incorporated into the Bill of Lading because Synergy drafted the Bill of Lading. (Doc. 24-1 at 18). Averitt alleges that terms and conditions limiting its liability were incorporated into the Bill of Lading when Averitt's driver affixed its pro-sticker to the Bill of Lading and representatives of both Synergy and Averitt signed the Bill of Lading. (*Id.*). Averitt states that the Tariff Item applicable under the circumstances of the drafting and signing of the Bill of Lading is Tariff Item 575-50, which limits Averitt's liability for the damage to Synergy's bowl to $0.10 per pound, or a total of $45.00. (*Id.* at 10-19). Averitt alleges that even if Tariff Item 575-50 does not apply, its liability is limited to $5.00 per pound, a total of $2,250.00, under Tariff Item 575. (*Id.* at 18). Averitt also asserts that in addition to the notice of liability limitations provided by the Bill of Lading signed by both parties, Synergy had actual knowledge of Averitt's Rules Tariff because Averitt had settled four claims with Synergy under Tariff Item 575 at a $5.00 per pound release rate prior to the bowl's shipment. (*Id.*, citing Exh. D, Whitaker Affidavit, ¶ 15; Exh. 2).[4]

In response, plaintiff argues that Averitt is liable for the full amount of damage to the bowl Averitt received from Synergy and shipped because Averitt did not effectively limit its liability under the Carmack Amendment. (Doc. 25 at 4-13). Synergy alleges that Averitt did not provide Synergy with a reasonable opportunity to choose between different levels of liability as the Carmack Amendment requires a carrier to do in order to limit its liability under the governing law. Specifically, Synergy contends that Averitt did not offer it a fair opportunity to choose a higher level of liability coverage than that offered under Tariff Item 575-50 or, assuming it applies, Tariff Item 575. (*Id.* at 6-7). Synergy argues that the fact it prepared the Bill of Lading does not alter the outcome. (*Id.* at 9-12). Synergy asserts that the Bill of Lading contains only

---

[4] It appears defendant meant to cite ¶ 16.

conditional language and does not constitute an agreement to limit Averitt's liability. Synergy argues that it had no choice but to accept a $0.10 per pound limitation under the terms of Tariff Item 575-50 and it was not offered greater coverage by Averitt; whether it was aware of the $0.10 per pound limitation of liability that Averitt seeks to apply to the bowl shipment under Tariff Item 575-50 is a disputed fact; and the purported limitation of $0.10 per pound is not "reasonable under the circumstances" and therefore cannot lawfully limit Averitt's liability pursuant to 49 U.S.C. § 14706(c)(1)(A). (*Id*. at 12).

In reply, defendant Averitt disputes whether the bowl arrived at the shipping destination in a damaged condition. (Doc. 29 at 1). Averitt further argues that the language in the Bill of Lading and the Averitt pro-sticker form part of the contract of carriage between Synergy and Averitt. (*Id*. at 18). Averitt alleges that by using its own Bill of Lading, which did not include a space to declare a higher value for the bowl than the $0.10 per pound limit of liability in the Averitt Rules Tariff, Synergy indisputably "made a conscious decision <u>not</u> to declare a higher value for its freight" and thereby effectively chose a lower shipping rate for itself and the applicable limitation of liability for Averitt. (*Id*. at 3, 11) (emphasis in original). Averitt argues that if Synergy wanted to declare a higher value for its property, it would have included a space to declare such a value in its Bill of Lading or have declared the value of the freight in other spaces provided on the Bill of Lading. (*Id*. at 3). Averitt alleges: "This is a classic situation in which the shipper, Synergy, classified an article as a piece of used machinery, i.e. a 'bowl,' when in fact it was a component assembly to a high speed commercial centrifuge . . . to get a lower shipping rate." (*Id*. at 3-4).

Plaintiff Synergy moves for summary judgment for the same reasons it presents in opposition to defendant Averitt's motion, i.e., Averitt did not offer Synergy a fair opportunity to

choose between two or more levels of liability. (Doc. 28 at 4). Synergy contends that Averitt's

Tariff Item 575-50, which is applicable to used machinery components and which Averitt alleges

applies here, by its terms does not offer the shipper a choice to declare a value greater than $0.10

per pound and as such cannot constitute a "reasonable" agreement to limit liability coverage

under 49 U.S.C. § 14706(c)(1)(A) as a matter of law. (Doc. 28 at 5, citing Doc. 24, Exh. D,

Whitaker Aff., Exh. 3). Synergy alleges that Averitt offered it no other alternative to that tariff

rate and therefore did not effectively limit its liability pursuant to § 14706. (*Id.* at 5, citing Exh.

B, Seth Ream Aff., Exh. 1).

   In response, defendant Averitt alleges that plaintiff has misapplied the relevant case law.

(Doc. 34). Averitt argues that Synergy is bound by Averitt's applicable tariff - Tariff Item 575-

50 - in accordance with the terms of the Bill of Lading, which Synergy drafted. Plaintiff argues

in reply that it has established a prima facie case of liability under the Carmack Amendment;

Averitt has not shown that the Bill of Lading was an agreement to lawfully limit its liability

under the Carmack Amendment; and there is no genuine issue of fact that Synergy did not have

the option to secure a higher level of liability protection under the terms of the parties'

agreement. (Doc. 35).

### *1. The Carmack Amendment*

   The Carmack Amendment creates "a national scheme of carrier liability for loss or

damages to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transp.,*

*Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). The Carmack Amendment states in pertinent part:

   (1) Motor carriers and freight forwarders.- A carrier providing transportation or
   service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a
   receipt or bill of lading for property it receives for transportation under this part.
   That carrier and any other carrier that delivers the property and is providing
   transportation or service subject to jurisdiction under subchapter I or III of chapter
   135 or chapter 105 are liable to the person entitled to recover under the receipt or

10

> bill of lading. The liability imposed under this paragraph is for the actual loss or
> injury to the property caused by (A) the receiving carrier, (B) the delivering
> carrier, or (C) another carrier over whose line or route the property is transported
> in the United States. . . . Failure to issue a receipt or bill of lading does not affect
> the liability of a carrier. . . .

49 U.S.C. § 14706(a)(1). A "carrier" includes "a motor carrier" and a "freight forwarder." 49

U.S.C. § 13102(3).

A burden-shifting framework applies to a claim under the Carmack Amendment. *CNA*

*Ins. Co. v. Hyundai Merchant Marine Co., Ltd*., 747 F.3d 339, 353 (6th Cir. 2014). The shipper

may establish a prima facie case by demonstrating three basic elements:

> (1) that the initial ('receiving') carrier received the cargo in good condition,
> (2) that the cargo was lost or damaged, and
> (3) the amount of actual loss or damages.

*Id*. The burden then shifts to the defendant-carrier to show it was not negligent and that the

damage was instead due to one of five causes, which may include "an act of the shipper itself."

*Id*. (citing *Missouri Pac. R.R. v. Elmore & Stahl,* 377 U.S. 134, 137-38 (1964)).

The default rule under the Carmack Amendment is the imposition of full liability on the

carrier for damage to cargo "unless the shipper has agreed to some limitation in writing." *Exel,*

*Inc.*, 807 F.3d at 148, 150 (citing *ABB Inc.*, 721 F.3d at 142). *See also Kelly Aerospace Thermal*

*Systems, LLC v. ABF Freight System, Inc*., No. 15-12227, 2016 WL 3197561, at *2 (E.D. Mich.

June 9, 2016). The intent of the Amendment is to "relieve[] shippers of the burden of

determining which carrier caused the loss as well as the burden of proving negligence" while

giving carriers "reasonable certainty in predicting potential liability" by preempting shippers'

state and common law claims against a carrier for loss or damage. *Exel, Inc*., 807 F.3d at 148

(citing *Certain Underwriters at Interest at Lloyds of London v. UPS*, 762 F.3d 332, 335 (3d Cir.

2014)).

There is a "very narrow" exception to the default rule which permits a carrier to limit its liability. *Id.* at 150 (citing 49 U.S.C. § 14706(c)(1)(A)). To successfully limit its liability under § 14706(c)(1)(A), a carrier must: (1) provide a shipper with the carrier's tariff if the shipper requests it[5]; (2) provide the shipper with a fair opportunity to choose between two or more levels of liability; (3) obtain the shipper's written agreement as to its choice of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. *Exel, Inc.,* 807 F.3d at 151-53 (citing *Toledo Ticket Company v. Roadway Express, Inc.*, 133 F.3d 439, 442 (6th Cir. 1998) and other cases). *See also Kelly Aerospace Thermal Systems, LLC*, 2016 WL 3197561, at *2. The burden is on the carrier to prove it has complied with these requirements. *Exel*, 807 F.3d at 151 (citing *OneBeacon Ins. Co. v. Haas Industries, Inc*., 634 F.3d 1092, 1099 (9th Cir. 2011)). Although there have been changes to the Carmack Amendment since this test was first formulated, the Sixth Circuit has clarified that a carrier must still "provide the shipper with both reasonable notice of any options that would limit the liability of the carrier and the opportunity to obtain the information about those options that will enable the shipper to make a deliberate and well-informed choice." *Id.* at 152 (citing *Toledo Ticket Company*, 133 F.3d at 442).

### 2. *Plaintiff has established a prima facie case under the Carmack Amendment.*

The Court finds for summary judgment purposes that plaintiff has established a prima facie case of liability under the Carmack Amendment. Plaintiff has introduced evidence that Averitt received the bowl in an undamaged condition, which defendant does not dispute; the

---

[5] Before 1995, carriers were required to publicly file their rates, or "tariffs," with the Interstate Commerce Commission (ICC) and a carrier could not deviate from the published tariff. *ABB Inc.,* 721 F.3d at 137 (citations omitted). Shippers and carriers generally were charged with notice of the terms that were required to be included in the carrier's published tariffs. *Id.* at 137-38 (citations omitted). In 1995, the tariff publication requirement was eliminated. *Id*. at 138. The term "tariff" is now a contractual term with "no effect apart from [its] status as [a] contract[ ]." *Id.* (quoting *Tempel Steel Corp. v. Landstar Inway, Inc.,* 211 F.3d 1029, 1030 (7th Cir. 2000)).

bowl was damaged during the shipment (Doc. 25, Exh. A, Richart Aff., ¶¶ 5, 6; Exh. 1), which is

a disputed factual issue that the Court must resolve against defendant, the non-movant, for

purposes of its summary judgment motion (*Anderson*, 477 U.S. at 255) (the evidence of the

nonmovant is to be believed and all justifiable inferences are to be drawn in his favor); and the

damages plaintiff sustained totaled $49,748.00, which is likewise a disputed factual issue that the

Court must resolve in plaintiff's favor for purposes of defendant's motion.[6] (*See* Doc. 29 at 1)

### 3. Whether Averitt effectively limited its liability

Because plaintiff has established a prima facie case of liability under the Carmack

Amendment, the question is whether the "very narrow" exception to the default rule applies such

that defendant Averitt's liability is limited. *See Exel, Inc.,* 807 F.3d at 150; 49 U.S.C. §

14706(c)(1)(A). Averitt alleges that the four-factor analysis set forth in *Toledo Ticket* for

determining whether a carrier has effectively limited its liability under the Carmack Amendment

is altered in a case such as this where the shipper drafted the Bill of Lading. Averitt cites several

district court cases from other federal circuits to support its position that the analysis is altered in

such a situation.[7] Insofar as the decisions defendant relies on apply a modified analysis for

determining whether a limitation of liability applies when a case involves a shipper-drafted bill

of lading, those decisions do not control here. The Sixth Circuit in *Exel, Inc.* expressly

considered the significance of the fact that the shipper drafted the bills of lading in the case

before it. *Exel, Inc.*, 807 F.3d at 153. The Court found that fact was "relevant in ascertaining

---

[6] Plaintiff has submitted an Averitt "Loss/Damage Claim Form" for damages in this amount. (Doc. 25-1, Exh. A, Richart Aff., Exh. 1). The claim form references an attached "repair quote" for the amount of damages claimed; however, the repair quote is not attached to the form. (*Id.*).

[7] Those decisions are: (1) *Hisense USA Corp. v. Central Transport, LLC*, No. 14 C 7485, 2015 WL 4692460 (N.D. Ill. Aug. 6, 2015); (2) *Valerus Compression Services L.P. v. Lone Star Transportation, LLC*, No. 10-C-517, 2011 WL 3566865 (E.D. Wis. Aug. 15, 2011); (3) *Pileco, Inc. v. Dallas Mavis Specialized Carrier Co., Inc.*, No. 4:07-2701, 2009 WL 10302497 (S.D. Tex. Jan. 14, 2009); (4) *Penske Logistics, Inc. v. KLLM, Inc.*, 285 F. Supp.2d 468, 475 (D. N.J. 2003); and (5) *AIM Controls, LLC v. USF Reddaway, Inc.*, No. H-08-cv-1662, 2008 WL 4925028, at *3 (S.D. Tex. Nov. 17, 2008)).

whether the shipper was offered, and agreed to, a limitation of liability by the carrier." *Id*. (citing

*Siren, Inc. v. Estes Exp. Lines*, 249 F.3d 1268, 1271-73 (11th Cir. 2001) ("holding that shipper

who prepared bill of lading could not avoid limitation of liability it had included in the contract

where shipper used term understood in trucking industry as limiting liability to a certain amount

per pound of cargo despite its claim that it did not have actual knowledge that the class

designation was a limitation of liability because shipper was aware that it received a significant

discount from the carrier's full liability rate for the shipment"); *North Hughes Aircraft Co. v.

North American Van Lines, Inc*., 970 F.2d 609, 612 (6th Cir. 1992) ("holding that a shipper who

drafted a bill of lading and negotiated its terms was subject to liability limitation")). However,

the fact that the shipper drafted the bill of lading was not dispositive of whether the shipper had

in fact been offered a limitation of liability by the carrier and had agreed to the limitation. *Id*. at

153 (citing *ABB Inc.*, 721 F.3d at 137-38, 145) (stating that "[t]he text of the Carmack

Amendment imposes full liability on carriers, without regard to which party prepared the bill of

lading" and that the court was "bound by the express language of the Carmack Amendment,

which puts the burden on the carrier to demonstrate that the parties had a written agreement to

limit the carrier's liability, irrespective whether the shipper drafted the bill of lading")). The

Sixth Circuit in *Exel, Inc*. gave no indication that the fact that the shipper drafted the bills of

lading altered the analysis for ascertaining the validity of the limitation of liability. The Court

held that whether the bills of lading drafted by the shipper effectively limited the carrier's

liability was "a question of fact, for resolution in the first instance by the district court." *Id*.

Accordingly, defendant's argument that a different analysis applies under 49 U.S.C. §

14706(a) when the shipper drafts the bill of lading (Doc. 24-1 at 10-18) is not well-taken. The

law set forth by the Sixth Circuit in *Exel, Inc*. guides the Court's analysis in this case. In

accordance with the law of this Circuit, the Court's function on summary judgment is to determine whether there is a genuine issue of material fact as to whether defendant Averitt has carried its burden under the *Toledo Ticket* factors (as modified) to show that the narrow exception for limiting its liability is satisfied here.  In this case, resolution of the summary judgment motions turns on two of the four *Toledo Ticket* factors: the second factor, which is whether Averitt provided Synergy with a fair opportunity to choose between two or more levels of liability, and the third factor, which is whether Averitt obtained Synergy's written agreement as to its choice of liability.

The Court's analysis starts with the third factor.  To ascertain whether Averitt obtained Synergy's written agreement as to its choice of liability, the Court must determine the terms of the parties written agreement, including any applicable tariffs, rates and classifications that were incorporated by agreement.  Averitt alleges that Tariff Item 575-50, which applies to the shipment of used machinery parts, applies to the shipment of plaintiff's bowl and limits its liability for damage or loss to $0.10 per pound.  This Tariff Item states that machinery parts when shipped as "used" (such as the bowl) "will be accepted for transportation only when the [shipper] releases the value of the property to a value not exceeding $0.10 per pound" and that failure to do so will not alter the application of the item.  (Doc. 24, Exh. 3).  Plaintiff disputes that the parties entered into a written agreement to apply Tariff Item 575-50 to the shipment.  For the reasons discussed below, the Court finds there are questions of fact as to whether the parties' written agreement effectively establishes a limitation of liability in this case.

It is undisputed that Synergy drafted a Bill of Lading which both parties signed.  The Bill of Lading includes the following information that is relevant to the alleged limitation of liability:

Note: Liability limitation for loss or damage in this shipment *may be* applicable.

15

> Received, subject to individually determined rates or contracts that have been
> agreed upon in writing between the carrier and shipper, *if applicable*, otherwise to
> the rates, classifications, and rules that have been established by the carrier and
> are available to the shipper, on request, and to all applicable state and federal
> regulations.

(Doc. 1, Exh. A) (emphasis added).

The Bill of Lading, by its terms, does not resolve the parties' dispute as to whether the

parties agreed to limit Averitt's liability pursuant to Tariff Item 575-50. The language of the Bill

of Lading is conditional. The Bill of Lading states only that a limitation of liability "may be"

applicable. (*Id.*). It does not state that a specific liability limitation applies to the shipment in

question nor indicate that the parties agreed to a limitation of liability for that shipment. Nor

does the Bill of Lading conclusively show that the "rates, classifications and rules" established

by the carrier apply. (*Id.*). To the contrary, the Bill of Lading indicates that these apply unless

the carrier and shipper have agreed in writing upon individually determined rates or contracts.

(*Id.*). The Bill of Lading gives no indication as to which of these circumstances applies to the

particular shipment it covers.

Defendant Averitt nonetheless argues in reliance on an unpublished district court decision

from this Circuit that the language in the Bill of Lading drafted by Synergy is sufficiently

explicit to limit Averitt's liability consistent with *Toledo Ticket*, 133 F.3d at 444 (acknowledging

that "the bill of lading need not strictly comply with the applicable tariff in order to effectively

limit liability; substantial compliance is sufficient.") (citation omitted). (Doc. 29 at 15-16, citing

*Tennessee Wholesale Nursery v. Wilson Trucking Corp*., No. 3:12-cv-00937, 2013 WL 5780124,

at *4 (M.D. Tenn. Oct. 25, 2013)). Defendant Averitt specifically relies on the following

findings made by the *Tennessee Wholesale Nursery* Court in support of its holding that the

defendant carrier's liability to the plaintiff shipper was limited to $2.00 per pound: (1) the parties

16

did not dispute that the shipper filled out the bills of lading and did not complete sections listing the declared value of goods and providing spaces to include the value; (2) the bills of lading "contained language explaining that defendant's liability might be limited pursuant to 49 U.S.C. § 14706(c)(1)(A) & (B)" and the carrier's tariff; (3) the bills of lading included language stating that all shipments were "RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to rates, classifications and rules that have been established by the carrier and are available to the shipper upon request"; (4) the carrier had tariffs in effect on the dates of the shipments at issue which limited its liability to no more than $2.00 per pound; and (5) it was undisputed that "in exchange for limiting its liability, Defendant provided Plaintiff reduced, discounted freight rates as provided for in [the carrier's tariff]." *Id.*, at \*4.

The Court declines to follow the decision in *Tennessee Wholesale Nursery* because the Sixth Circuit has since clarified that the law applied in that case is not good law. *Tennessee Wholesale Nursery* states that under the Carmack Amendment, "when a shipper fills out a bill of lading signed by both the shipper and carrier, which makes reference to a liability-limiting tariff provision, the tariff [is] enforceable against the shipper." *Id.*, at \*4 (citing *EFS Nat'l Bank v. Averitt Exp., Inc.*, 164 F. Supp.2d 994, 1001 (W.D. Tenn. 2001) (citing *Siren, Inc.*, 249 F.3d at 1271-73)). *EFS Nat'l Bank* had questioned the continued validity of *Toledo Ticket* following the ICC Termination Act of 1995 and did not hold the carrier was required to fully comply with *Toledo Ticket's* requirements in order to effectively limit its liability. 164 F. Supp.2d at 1001-1002. *See also Medvend, Inc. v. YRC, Inc.*, 23 F. Supp.3d 844, 848 (E.D. Mich. 2014) (finding that as of the date of its 2014 decision, "[t]he Sixth Circuit has not clarified the impact of the 1995 changes to the Carmack Amendment on its holding in *Toledo Ticket*" and that "until the

17

Sixth Circuit rules that the 1995 revisions to the Carmack Amendment undercut its ruling in *Toledo Ticket*, the most prudent course is to continue to follow the guidance of *Toledo Ticket*."). In its subsequent 2015 decision, the Sixth Circuit in *Exel, Inc.* left no doubt that the following *Toledo Ticket* requirements survive the 1995 amendments: (1) the requirement that there be a written agreement between the parties, and (2) the requirement that "a carrier must provide the shipper with both reasonable notice of any options that would limit the liability of the carrier and the opportunity to obtain the information about those options that will enable the shipper to make a deliberate and well-informed choice." *Exel*, 807 F.3d at 150-53 (citing *Toledo Ticket*, 133 F.3d at 442).

The language of the Bill of Lading in this case is ambiguous. Therefore, it is not sufficient standing alone to show the parties entered into a written agreement to limit Averitt's liability for damage to the bowl pursuant to the terms of Tariff 575-50 under the "narrow exception" to the default rule of imposition of full liability on the carrier for damages under the Carmack Amendment. Unless there is additional evidence of a written agreement to this effect, defendant Averitt has not met its burden on summary judgment to show the third *Toledo Ticket* factor requiring a written agreement to limit liability is satisfied.

Averitt relies on the following evidence in addition to the Bill of Lading to show the parties entered into a written agreement to apply the limitation of liability in Tariff Item 575-50 to the shipment of Synergy's bowl so as to satisfy the third *Toledo Ticket* requirement: (1) the pro-sticker Averitt's driver attached to the Bill of Lading; and (2) plaintiff Synergy's failure to include a space for a released value on the Bill of Lading or to otherwise list a release value anywhere on the Bill of Lading. For the reasons explained below, this evidence is insufficient to

show that the parties agreed to a limitation of liability of $0.10 per pound in accordance with Tariff Item 575-50.

Defendant Averitt contends that there was an effective agreement to limit its liability because the terms of Tariff Item 575-50 were incorporated into the Bill of Lading by means of the pro-sticker its driver affixed to the Bill of Lading which reads: "This shipment is subject exclusively to the Uniform Bill of Lading, the liability limitations and all other applicable provisions of the carrier's individual and collective tariffs, including NMF 100." (Doc. 24, Exh. D, Whitaker Affidavit, ¶ 11). In support of its position, defendant cites two unpublished decisions issued by district courts in other circuits: *AIM Controls, LLC*, No. H-08-cv-1662, 2008 WL 4925028, at *1 (S.D. Tex. Nov. 17, 2008) and *Hisense USA Corp., LLC*, 2015 WL 4692460. (Doc. 24-1 at 11-12).

Defendant Averitt indicates that the decision in *AIM Controls* explains the effect of the Averitt "pro-sticker." The Court in *AIM Controls* noted that the shipper can prepare the bill of lading which the parties agree to and sign, in which case the shipper is charged with knowledge of the terms incorporated into the bill of lading. *Id.*, at *2. The Court found that the bill of lading prepared by the shipper in that case satisfied all four factors of the applicable test for limiting carrier liability. *Id.*, at 4. The second factor – whether the carrier obtained the shipper's consent to its choice of liability – was satisfied because the parties signed the tariff *after* the carrier affixed its pro-sticker, and the fourth factor – the issuance of a receipt of bill of lading prior to moving the shipment – was satisfied because the carrier "specified its tariff by placing the sticker on the bill of lading, which [the shipper] then signed." *Id.*, at *4. Defendant notes that in *Hisense USA Corp.*, 2015 WL 4692460, the Rules Tariff was incorporated into the bill of lading prepared by the shipper because: "(1) the bill indicated that the shipment was received

19

subject to the 'tariffs in affect [sic ]'"; (2) the carrier's "driver affixed a sticker indicating that the Rules Tariff applied"; and (3) "both parties signed the bill of lading." *Id*., at *5. The *Hisense USA Corp* Court found that the bill of lading was nonetheless insufficient to limit liability, even though it referenced a Rules Tariff, because "mere reference to the tariff is insufficient to limit liability. Instead, the bill of lading must contain additional language that demonstrates notice and agreement [to limit liability."]. *Id*., at *5. In that case the bill of lading made "no mention of a liability limitation and contain[ed] no blank in which to declare value." *Id*. The Court found that the only evidence of notice and agreement presented by the carrier was the shipper's indication that the shipment was "released to the value at which the lowest freight charges apply," which did not equate to an agreement to limit liability. *Id*. The Court therefore denied summary judgment in the carrier's favor.

The decisions in *AIM Controls* and *Hisense* do not support a grant of summary judgment in defendant Averitt's favor. First, *AIM Controls* does not support defendant's position because the case is distinguishable on its facts from the case before this Court. In *AIM Controls*, there was no dispute that the parties signed the Bill of Lading *after* the carrier had affixed the pro-sticker. *AIM Controls*, 2015 WL 4692460, at *4. Here, while the parties do not dispute that Averitt's driver affixed the pro-sticker to the Bill of Lading, whether the pro-sticker was affixed at the time the parties signed the Bill of Lading is disputed. (*See* Doc. 25 at 8). If the parties signed the Bill of Lading *before* the pro-sticker was attached, then the parties did not agree to the terms of the pro-sticker by signing the Bill of Lading. There is no evidence in the record that bears on this particular issue. Thus, it is unsettled whether the terms of the pro-sticker were incorporated into the Bill of Lading.

20

This case is factually similar to *Hisense USA Corp.*, insofar as the Bill of Lading here generally references Averitt's tariffs, Averitt's driver affixed a pro-sticker to the Bill of Lading, and the Bill of Lading did not contain a blank for declaring a value. *See Hisense USA Corp.*, 2015 WL 4692460, at *5. However, as was the situation in *Hisense USA Corp.*, the mere reference to Averitt's tariffs in the Bill of Lading is insufficient to establish an effective limitation of liability. There is no additional language in the Bill of Lading that demonstrates notice and an agreement to limit liability. To the contrary, the language in the Bill of Lading prepared by Synergy is conditional, and there is no evidence as to whether the parties signed the Bill of Lading after the pro-sticker was affixed so as to agree in writing to the limitation of liability in Tariff 575-50. Because it is Averitt's burden to establish that a limitation of liability applies, the Court must construe the disputed facts bearing on this issue in Synergy's favor for purposes of resolving Averitt's summary judgment motion.[8] The Court must assume for summary judgment purposes that the parties signed the Bill of Lading before Averitt's driver affixed the pro-sticker such that the Bill of Lading did not incorporate the terms of the pro-sticker and that the parties are therefore bound by the written terms of the Bill of Lading without reference to the terms of the pro-sticker.

To further support its position that Synergy agreed to the limitation of liability specified in Tariff Item 575-50, defendant Averitt relies on Synergy's failure to include a space to declare the value of its property, or to write a value elsewhere, on the Bill of Lading. Averitt argues that by failing to include a space to declare a value, Synergy effectively chose the limitation specified in Tariff Item 575-50, ¶ 1. Averitt's position is inconsistent with the law of this Circuit, which requires a carrier to obtain the shipper's written agreement as to its choice of liability in order to

---

[8] Conversely, this fact and the other evidence must be construed in defendant's favor for purposes of deciding whether plaintiff is entitled to summary judgment in its favor on the Carmack Amendment claim.

effectively limit its liability, and with the Court's holding in *Toledo Ticket*. *See Exel, Inc.*, 807

F.3d at 151 (citing *Toledo Ticket Company*, 133 F.3d at 442). In *Toledo Ticket*, the Sixth Circuit

expressly rejected the carrier's argument that the shipper's failure to "fill in the blanks" on the

carrier's bill of lading could "be held to be an affirmative act of agreement to abide by [a] lower

valuation" so as to satisfy the written agreement requirement. 133 F.3d at 443. The Court

reasoned as follows:

> In order to satisfy the third requirement, a carrier must obtain the shipper's written
> declaration or agreement to abide by a lower valuation of its property. That
> declaration or agreement must evince an absolute, deliberate and well-informed
> choice by the shipper to abide by a limited valuation of its property. The shipper
> must 'agree in the same sense that one agrees or assents to enter into a contractual
> obligation.' . . . . Clearly, there was no such written declaration or agreement by
> Toledo Ticket to limit Roadway's liability.

*Id.* (internal citations omitted).

As in *Toledo Ticket*, Synergy's failure to provide a blank space for a valuation of its

property or to list a valuation anywhere on the Bill of Lading it prepared falls far short of

evincing "an absolute, deliberate, and well-informed choice by [Synergy] to abide by a limited

valuation of its property."[9] *Id.* Accordingly, this fact does not support Averitt's position that the

parties entered into a written agreement to limit Averitt's liability to $0.10 per pound in

accordance with Tariff Item 575-50.

In addition to the lack of evidence demonstrating the parties entered into a written

agreement to limit Averitt's liability pursuant to Tariff Item 575-50, there is a genuine issue of

material fact as to whether Averitt gave Synergy a choice as to two or more levels of liability so

---

[9] Defendant's position is also inconsistent with the decision in *Hisense USA Corp.*, 2015 WL 4692460, on which
defendant appears to  rely to argue that the Averitt Rules Tariff was incorporated into the Bill of Lading through the
pro-sticker. (Doc. 24-1 at 11). *Hisense* likewise involved a bill of lading which included no blank to declare a
value. *Hisense USA Corp.*, 2015 WL 4692460. Although the bill of lading stated that the shipment was received
"subject to the tariffs in [e]ffect" and indisputably incorporated the Rules Tariff through an attached sticker, the
Court nonetheless found that the bill of lading was insufficient to limit liability because "mere reference to [a Rules
Tariff] is insufficient to limit liability. Instead, the bill of lading must contain additional language that demonstrates
notice and agreement." *Id.*, at *5.

as to satisfy the second factor of the *Toledo Ticket* analysis. *See Toledo Ticket*, 133 F.3d at 442. Assuming Tariff Item 575-50 applies, the Tariff Item states on its face that Averitt's liability is limited to $0.10 per pound for shipments of used machinery components and provides for no exceptions. (Doc. 24, Exh. D, Whitaker Aff.; Exh. 3, Tariff Item 575-50, ¶¶ 1, 2). Thus, under the express terms of Tariff Item 575-50, it appears that plaintiff had no choice but to accept a limitation of liability of $0.10 per pound for the shipment of the bowl or else Averitt would have rejected the shipment. (*Id.*). There is no evidence that Synergy had the option to release the value of its property at a value that exceeded $0.10 per pound or that Averitt gave Synergy that option. Nor is there any evidence that a declaration of value by Synergy would have resulted in a different rate or level of liability. The fact that the Bill of Lading did not include either a space to declare a release value or an actual release value greater than $0.10 per pound thus appears to be of no relevance to the *Toledo Ticket* analysis. To limit its liability, Averitt must have first provided a choice of liability limitations to plaintiff. There is no indication in the record that Averitt did so here by offering Synergy an opportunity to release the value of its property at a value that exceeded $0.10 per pound, or that it gave Synergy "reasonable notice" of any such options so as to enable Synergy to make a deliberate and well-informed choice. *Exel*, 807 F.3d at 152. Thus, because there is no evidence showing that plaintiff Synergy was offered a choice among levels of liability or that it was told that Averitt's liability was limited, Averitt has not demonstrated on summary judgment that the second *Toledo Ticket* factor is satisfied.

As a final matter, Averitt seeks to rely on evidence outside the parties' written agreement to establish that it effectively limited its liability under Tariff Item 575-50 to $0.10 per pound. Specifically, Averitt points to the parties' prior dealings. Averitt alleges that Synergy had actual knowledge of Averitt's Rules Tariff because prior to the shipment at issue, Averitt had settled

23

four claims with Synergy under Tariff Item 575 with a $5.00 per pound release rate. (Doc. 24-1 at 18, citing Exh. D, Whitaker Affidavit, ¶ 15; *Id*., Exh. 2). In the cited portion of his affidavit, Whitaker states: "If the shipper desires to tender a shipment requiring carrier liability in excess of $5.00 per pound per package, the shipper can indicate on the bill of lading the total dollar amount of excess valuation required, not to exceed $5.00 per pound, per package, or $100,000 per conveyance." (*Id*., ¶ 15). Exhibit 2 attached to Whitaker's affidavit references four Synergy claims; four freight bills; four filed claim amounts ranging from $112.00 to $144.00; an Averitt liability limit of $5.00 per pound; and amounts paid based on the weight of the claimed item multiplied by the liability limit. (*Id*., Exh. D, Exh. 2). The document does not reference a tariff number, settlement terms, a bill of lading, or any other written agreement. Nor does the document reference the $0.10 liability limit that Averitt alleges applies to the shipment at issue. As such, the Court cannot reasonably infer from the exhibit that Synergy had actual knowledge that the $0.10 per pound limitation of Tariff 575-50 applied to the shipment at issue. In any event, the document does not permit an inference that Averitt gave plaintiff a choice as to liability limitations with respect to the particular freight shipment at issue. Even assuming Synergy had actual knowledge of Tariff 575-50, a genuine issue of fact exists as to whether Averitt gave Synergy a choice between the $0.10 liability limitation in Tariff Item 575-50 and another limitation.

The record thus shows that there are several factual and legal issues that cannot be resolved on the record before the Court. These issues include: (1) whether Synergy's bowl was damaged in transit and, if so, the amount of damage; (2) the terms of the parties' written agreement, whether the parties' written agreement incorporated the terms of Averitt's pro-sticker, and whether the terms of the parties' written agreement limited Averitt's liability to

24

$0.10 per pound in accordance with Tariff Item 575-50, or to some other amount; and (3) whether Averitt gave Synergy reasonable notice of any options that would limit Averitt's liability and a fair opportunity to choose between two or more levels of liability.  These issues preclude a grant of summary judgment in favor of either party on plaintiff's claim under the Carmack Amendment.

### IT IS THEREFORE ORDERED THAT:

(1)  Defendant Averitt's motion for partial summary judgment (Doc. 24) is **GRANTED** in part. Summary judgment is **GRANTED** in favor of defendant on plaintiff's state law claim for negligence (Count II).  Defendant's motion is **DENIED** as to plaintiff's claim brought under the Carmack Amendment (Count I).

2.  Plaintiff's motion for partial summary judgment on its claim under the Carmack Amendment Count I (Doc. 28) is **DENIED**.

Date:  _9/12/2016_

Karen L. Litkovitz
United States Magistrate Judge